UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

AARON T.,

                                  Plaintiff,

v.                                                                    1:18-CV-00298

                                                                      (MAD/TWD)

ANDREW SAUL,
COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,[1]

                                  Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

LEGAL AID SOCIETY OF NORTHEASTERN        MARY MARTHA WITHINGTON, ESQ.
NEW YORK – SARATOGA SPRINGS
  *Attorney for Plaintiff*
40 New Street
Saratoga Springs, New York 12866


SOCIAL SECURITY ADMINISTRATION          KRISTINA D. COHN, ESQ.
OFFICE OF REGIONAL GENERAL
COUNSEL, REGION II
  *Attorney for Defendant*
26 Federal Plaza - Room 3904
New York, New York 10278


**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## REPORT AND RECOMMENDATION

    This matter was referred to the undersigned for report and recommendation by the

Honorable Mae A. D'Agostino, United States District Judge, pursuant to 28 U.S.C. § 636(b) and

---

[1] Andrew Saul was sworn in as Commissioner of The Social Security Administration on June
17, 2019.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul is
substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.

Northern District of New York Local Rule 72.3. This case has proceeded in accordance with General Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed briefs. (Dkt. Nos. 9, 10.) Oral argument was not heard. For the reasons discussed below, the Court recommends that the Commissioner's decision be affirmed and that the complaint (Dkt. No. 1) be dismissed.

## I.     BACKGROUND AND PROCEDURAL HISTORY

Aaron T. ("Plaintiff") was born on October 20, 1976, and lives with his mother in Queensbury, New York. On September 17, 2014, Plaintiff filed an application for Social Security Disability Insurance ("SSDI") alleging disability as of April 14, 2014. (Administrative Transcript at 112.[2]) Plaintiff alleged disability due to chronic migraine headaches, vestibular neuritis, irritable bowel syndrome ("IBS"), anxiety, and panic disorder. (T. at 18, 113.) The application was denied on January 29, 2015. (T. at 122.) Thereafter, Plaintiff filed a written request for a hearing on February 20, 2015. (T. at 128.) A hearing was held on October 18, 2016, before Administrative Law Judge ("ALJ") Dale Black-Pennington. (T. at 84-110.) At the hearing, Mary Martha Withington, an attorney with the Legal Aid Society of Northeastern New York, represented Plaintiff. (*Id.*) A supplemental hearing was held on April 6, 2017, to elicit testimony from Margaret Hecht, a vocational expert. (T. at 69-82.) On May 26, 2017, the ALJ issued a decision finding Plaintiff was not disabled. (T. at 13-36.)

The ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") when the Appeals Council denied Plaintiff's request for

---

[2] The Administrative Transcript is found at Dkt. No. 8. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the numbers the Court's CM/ECF electronic filing system automatically assigns.

review on January 4, 2018.  (T. at 1-7.)  Plaintiff timely commenced this action challenging the Commissioner's decision on March 9, 2018.  (Dkt. No. 1.)

## II.    APPLICABLE LAW

### A.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  To facilitate the Court's review, an ALJ must set forth the crucial factors justifying her findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted).  Where substantial evidence supports the ALJ's findings they must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153.  In other words, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## B.      Standard for Benefits[3]

To be considered disabled, a plaintiff-claimant seeking SSDI benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (2015).  In addition, the plaintiff-claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

---

[3] The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

*Id.* § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social

Security Administration ("SSA") promulgated regulations establishing a five-step sequential

evaluation process to determine disability.  20 C.F.R. § 416.920(a)(4) (2015).  Under that five-

step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful
> activity; (2) whether the claimant has a severe impairment or
> combination of impairments; (3) whether the impairment meets or
> equals the severity of the specified impairments in the Listing of
> Impairments; (4) based on a "residual functional capacity"
> assessment, whether the claimant can perform any of his or her
> past relevant work despite the impairment; and (5) whether there
> are significant numbers of jobs in the national economy that the
> claimant can perform given the claimant's residual functional
> capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or

non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*,

540 U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps.  *Kohler v.

Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir.

1996)).  If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the

defendant-Commissioner at the fifth step to prove that the plaintiff-claimant is capable of

working.  *Id.*

## III.   THE ALJ'S DECISION AND THE PARTIES' CONTENTIONS

At step one of the sequential analysis, the ALJ found Plaintiff was not engaged in

substantial gainful activity.  (T. at 18.)  Proceeding to step-two, the ALJ determined Plaintiff had

the following severe impairments: chronic migraine headaches, vestibular neuritis, IBS, obesity,

anxiety, and panic disorder. (T. at 18.) However, at step-three, the ALJ determined that

Plaintiff's impairments did not meet or medically equal the severity of one of the listed

impairments in 20 C.F.R. Part 404, Subpart P, app'x. 1 (the "Listings"). (T. at 19.) Specifically,

the ALJ found Plaintiff's mental impairments, "considered singly and in combination," did not

meet or equal the criteria of Listings 12.04 and 12.06. (T. at 19.)

Thereafter, the ALJ, "[a]fter careful consideration of the entire record," concluded that

Plaintiff had the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the
> following nonexertional limitations: able to perform simple routine
> tasks; able to perform some complex tasks; able to follow and
> understand simple instructions and directions; and should avoid
> unprotected heights, vibrations, heavy moving mechanical parts
> and other known workplace hazards.

(T. at 20.) In reaching her RFC conclusion, the ALJ afforded "great weight" to the opinions of

Seth W. Wharton, M.D. ("Dr. Wharton"), and Daryl P. Didio, Ph.D. ("Dr. Didio"); "some

weight" to the opinions of Eric Diem, PT, MSPT ("Mr. Diem"), Thomas Osika, Ph.D. ("Dr.

Osika"), and J. Alpert, M.D. ("Dr. Alpert"); and "little weight" to the opinions of Albert Paolano,

M.D. ("Dr. Paolano"), Jeffrey E. Stark, RPA-C ("Mr. Stark"), and Fredrick Van Kempen, LCSW

("Mr. Van Kempen"). (T. at 26-28.)

Given Plaintiff's RFC, the ALJ found Plaintiff could perform past relevant work as a

packer and photo lab technician. (T. at 29.) Therefore, the ALJ concluded at step-four Plaintiff

was not disabled, as defined in the Social Security Act, from April 14, 2014, through the date of

her decision.[4] (T. at 30.)

---

[4] Despite concluding at step-four that Plaintiff was able to perform past relevant work, the ALJ
continued her analysis to step-five and determined, in the alternative, that Plaintiff could perform
other jobs existing in the national economy. (T. at 29.) Plaintiff does not challenge the ALJ's
step-five finding.

In support of his action, Plaintiff makes three principal arguments.  (Dkt. No. 9.)  First, Plaintiff asserts the ALJ improperly weighed medical evidence which caused the ALJ to find Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments.  Second, Plaintiff contends the ALJ failed to consider his physical impairments in combination with his mental impairments.  Third, Plaintiff argues that the ALJ failed to credit his own testimony regarding his physical and mental impairments and, therefore, reached an erroneous conclusion relative to his RFC.

In response, Defendant argues that the ALJ applied the correct legal standards and substantial evidence supports her decision.  (Dkt. No. 10.)

## IV.    ANALYSIS

### A.    Listed Impairments

#### 1.    The Parties' Positions

Plaintiff claims the ALJ erred in weighing the opinions of Mr. Van Kempen, Mr. Stark, Dr. Osika and Dr. Didio.  (Dkt. No. 9 at 16-18.)  According to Plaintiff, assigning the incorrect weight to these opinions caused the ALJ to find Plaintiff's anxiety and panic disorder did not meet Listing 12.06.  (*Id*. at 17.[5])  Specifically, Plaintiff contends the ALJ erred in assigning Dr. Osika's and Dr. Didio's opinions greater weight than his treating providers.  Plaintiff argues Mr. Van Kempen and Mr. Stark were his "treating providers" and "[h]ad appropriate weight been given to the opinions of [his] treating providers, a finding of disability would have been reached."  (*Id*. at 18.)

---

[5]  Page references to the parties' briefs identified by docket number are to the numbers the Court's CM/ECF electronic docketing system automatically assigns.

Defendant, on the other hand, asserts Mr. Van Kempen and Mr. Stark are not "acceptable medical sources" and the ALJ properly accorded "little weight" to their opinions.  (Dkt. No. 10 at 12-13.)  Defendant further argues substantial evidence, including Dr. Osika and Dr. Didio's opinions, supported the ALJ's conclusion that Plaintiff's anxiety and panic disorder did not meet the listing requirements at 12.06.  (*Id*.)

### 2. Opinion Evidence

Acceptable medical sources include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists.  20 C.F.R. § 404.1513(a).  Licensed clinical social workers and physician assistants are not "acceptable medical sources."  SSR 06–03p, 2006 WL 2329939, *2 (Aug. 9, 2006).[6]

Medical opinions from a provider who is not an "acceptable medical source" are not subject to the treating physician rule, *i.e.*, the ALJ need not afford those opinions controlling weight where the opinions are well supported and not inconsistent with the other substantial evidence of record.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Nonetheless, SSR 06-3p provides that an ALJ will assess the medical opinions of a provider who is not an "acceptable medical source" in the same manner as a medical opinion from an "acceptable medical source."  SSR 06–03p, 2006 WL 2329939, *4 (Aug. 9, 2006) (citing 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d)).  Thus, the ALJ will consider the following factors in deciding what weight to afford the opinion of a non-acceptable medical source: whether the source examined the

---

[6] SSR 06-03p was rescinded on March 27, 2017, because it was inconsistent with newly promulgated regulations related to the opinions and other evidence from sources who are not acceptable medical sources.  *See* Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15,263 (Mar. 27, 2017).  However, those newly promulgated regulations apply to claims filed on or after March 27, 2017.  Therefore, SSR 06-03p remains relevant to Plaintiff's claim because it was filed before March 27, 2017.

claimant; how well the source explains his or her opinion with relevant evidence; how consistent the opinion is with the record as a whole; whether the source is a specialist in the area of his or her opinion; and other factors tending to support or contradict the opinion.  20 C.F.R. § 404.1527(c)(1)-(6).[7]

Mr. Van Kempen is a licensed clinical social worker (T. at 513) and Mr. Stark is a physician assistant.  (T. at 590)  Thus, the record confirms, and the parties do not dispute, that Messrs. Van Kempen and Stark are not "acceptable medical sources."  As such, Messrs. Van Kempen and Stark's opinions are not subject to the treating physician rule.  Nonetheless, to avoid legal error, the ALJ still must have considered their opinions with the other record evidence and provided a basis for what weight she assigned their medical opinions.

With respect to Mr. Stark, his primary opinion is found in a letter dated October 20, 2015, wherein he stated Plaintiff was diagnosed in 2014 with vestibular neuritis and subsequently had vestibular rehabilitation.  (T. at 469, 590.)  Mr. Stark noted Plaintiff's condition "caused severe vertigo making it impossible for him to drive or perform his duties at work."  (*Id.*)  Mr. Stark said anxiety and panic attacks are associated with Plaintiff's condition.  (*Id.*)  Mr. Stark specified Plaintiff was prescribed medication, receiving counseling, and being referred to a specialist for further evaluation.  (*Id.*)  Finally, Mr. Stark asserted that his condition "prevents [Plaintiff] from working."  (*Id.*)

The ALJ afforded Mr. Stark's opinion "little weight" because his assessment was "not consistent with other treating physicians."  (T. at 27.)  For example, as the ALJ explained, Mr. Stark's opinion is inconsistent with Dr. Wharton's March 31, 2016, opinion that Plaintiff should

---

[7]  For claims filed before March 27, 2017, the rules in 20 C.F.R. § 404.1527 apply.  For claims filed on or after March 27, 2017, the rules in 20 C.F.R. § 404.1520c apply.

avoid working on heights or around heavy machinery.  (T. at 403)  Mr. Stark's opinion is likewise inconsistent with Dr. Didio's opinion which noted Plaintiff had no limitations understanding, remembering, and carrying out simple instructions; mild limitations making judgments on simple work-related decisions; and mild to moderate limitations understanding, remembering, carrying out, and making judgments on complex work-related decisions.  (T. at 582.)

The ALJ afforded Dr. Wharton and Dr. Didio's opinions "great weight" as they were consistent with one another and with other record evidence.  (T. at 26, 28.)  To that end, Dr. Wharton's and Dr. Didio's opinions were consistent with Dr. Osika's opinion that Plaintiff would be able to understand and complete simple tasks and would have mild difficulty with complex tasks.  (T. at 395.)  It is well established that the report of a consultative physician, such as Dr. Osika and Dr. Didio, may constitute substantial evidence.  *Mongeur v. Heckler,* 722 F.2d 1033, 1039 (2d Cir. 1983) (holding that a report from a consultative physician constitutes substantial evidence that may invalidate a treating physician's contradictory opinion (citations omitted)).  Although the Second Circuit has cautioned against ALJs "rely[ing] heavily on the findings of consultative physicians after a single examination," such reliance is warranted where, as here, there are consistent opinions in the record.  *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013) (citation omitted).  Accordingly, the Court declines to find the ALJ's decision not to give Mr. Stark's opinion greater weight than Dr. Wharton, Dr. Osika, and Dr. Didio was legal error.

With respect to Mr. Van Kempen, the ALJ accorded his opinion "little weight" because his assessment was inconsistent with the record evidence.  (T. at 27.)  For example, as the ALJ pointed out, Plaintiff's testimony is inconsistent with Mr. Van Kempen's assessment that Plaintiff is "socially isolated."  (*Compare* T. at 549 (Mr. Van Kempen noting that Plaintiff is

10

"socially isolated"); *with* T. at 101 (Plaintiff indicating he has no problems with crowds because

he goes out shopping); T. at 103 (Plaintiff noting that he goes grocery shopping once a week); T.

at 104 (Plaintiff testifying that he gets out with his father to go out to eat, go to the movies or go

to the mall)). As with Mr. Stark's opinion, Mr. Van Kempen's opinion is similarly inconsistent

with the opinions of Dr. Wharton and Dr. Didio. In this case, the Court finds the ALJ properly

considered Mr. Van Kempen's opinion in relation to the other record evidence.

        3.    <u>The ALJ's Impairment Finding</u>

Having determined the ALJ properly weighed the medical evidence, the Court similarly

finds substantial evidence supports the ALJ's conclusion that Plaintiff's anxiety and panic

disorder did not meet the requirements of Listing 12.06. To make such a determination, the ALJ

considered the "paragraph B" and "paragraph C" criteria to determine whether Plaintiff's mental

impairments met or equaled Listing 12.06 of the listings. (T. at 19-20.)[8]

Paragraph B provides that a plaintiff must demonstrate he had at least two marked

restrictions or one extreme limitation in the following areas of mental functioning: (1)

understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or

maintain pace; (4) adapt or manage oneself. 20 C.F.R., Pt. 404, Subpt. P, app'x. 1, §12.06(B).

Paragraph C provides that a plaintiff must demonstrate his or her mental disorder is

"serious and persistent," meaning there is a medically documented history of the disorder for

over a period of at least two years. 20 C.F.R., Pt. 404, Subpt. P, app'x. 1, §12.06(C) (2013).

---

[8] The ALJ did not explicitly address the criteria of "paragraph A," which generally requires "medically documented persistence" of specified symptoms or conditions. 20 C.F.R. Pt. 404, Subpt. P, app'x 1., §§ 12.06(A). The Court assumes that the ALJ found Plaintiff satisfied these requirements. *See Cienfuegos v. Comm'r of Soc. Sec.*, 13-Civ. 6968, 2015 WL 256134 at *14 (S.D.N.Y. Jan. 21, 2015) (concluding that a reviewing court may assume the ALJ found claimant met paragraph A criteria where these criteria are not expressly addressed, and the ALJ considered only paragraphs B and C).

Next, the plaintiff must provide evidence of (1) medical treatment that is ongoing and that diminishes the symptoms and signs; and (2) marginal adjustment, *i.e.*, that the plaintiff has a minimal capacity to adapt to changes in his or her environment or to demands that are not already part of the plaintiff's daily life. *Id*.

a. <u>Paragraph B</u>

With respect to understanding, remembering, and applying information, the ALJ relied upon Plaintiff's testimony (T. at 84-110) and a questionnaire (T. at 250-65) to note Plaintiff "stated that he could prepare meals, pay bills, go to doctor's appointments, take medications, shop, and read." (T. at 19.) The ALJ also described Plaintiff's documented ability to provide accurate information regarding his prior work history and noted he interacted well with medical providers. (*Id*.) Accordingly, the ALJ determined Plaintiff had mild limitations in understanding, remembering, and applying information. (*Id*.)

Next, as to interacting with others, the ALJ noted Plaintiff lives with his mother and can shop. (T. at 19, 84-110, 250-65.) The ALJ also pointed to Dr. Osika's medical opinion that stated Plaintiff visits family, brings in wood, and tries to help as needed around the house. (T. at 19, 395.) Finally, the ALJ contended that the medical evidence showed Plaintiff had good rapport with medical providers and non-medical staff. (T. at 19.) The ALJ concluded Plaintiff has moderate limitations interacting with others. (*Id*.)

The ALJ determined Plaintiff has a moderate limitation in his ability to concentrate, persist or maintain pace. (T. at 20.) The ALJ noted Plaintiff could prepare meals, watch television, manage funds, and handle his own medical care. (T. at 20, 84-110, 250-65, 393-95.) The ALJ further noted a lack of medical evidence indicating Plaintiff had issues in concentration. (T. at 20.)

Finally, the ALJ determined Plaintiff had moderate limitations in his ability to adapt or manage himself.  (T. at 20.)  The ALJ noted Plaintiff had appropriate grooming and hygiene, no problem getting along with providers and staff, normal mood and affect, and no problems with temper control.  (T. at 20, 84-110, 250-65.)

Though Plaintiff points to record evidence that suggests the ALJ reached the wrong conclusion, the Court is not entitled to reject the ALJ's determination where there is evidence to support either position.  *See Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 448 (2d Cir. 2012) (finding "[t]he substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder *would have to conclude otherwise*" (citation and internal quotation marks omitted; emphasis in the original)).  Rather, if substantial evidence supports the findings of the Commissioner as to any fact, those findings are conclusive.  *Diaz v. Shalala*, 59 F.3d 307, 312 (2d Cir. 1995).  As described above, the ALJ carefully considered the record evidence, including Plaintiff's testimony and questionnaire, and determined hat Plaintiff did not have a marked limitation in any of the paragraph B criteria.  Accordingly, the Court finds substantial evidence supports the ALJ's conclusion that Plaintiff's anxiety and panic disorder did not meet the listing requirements of 12.06B.

> b.  Paragraph C

As the ALJ noted, there is no evidence in the record of repeated episodes of decompensation as defined in the Act, nor was there any evidence Plaintiff lacked the capacity to adapt to environmental changes or demands with which he was not already familiar.  (T. at 20.)  Rather, there is evidence that suggested Plaintiff would not have repeated episodes of decompensation.  Specifically, Dr. Didio's consultative report indicated Plaintiff would have no repeated episodes of decompensation each of extended deterioration.  (T. at 586.)  Accordingly,

substantial evidence supports the ALJ's conclusion that Plaintiff's condition failed to meet the requirements of paragraph C.  Based on the foregoing, the Court finds substantial evidence supports the ALJ's conclusion that Plaintiff's impairments did not satisfy the paragraph C criteria.

**B.     The Combined Impact of Plaintiff's Impairments**

Plaintiff argues the ALJ failed to consider his mental impairments in connection with his physical impairments.  (Dkt. No. 8 at 18-19.)  The Court finds Plaintiff's argument is without merit.  The ALJ's decision cites instances in the record where Plaintiff's anxiety is said to aggravate his dizziness.  (T. at 23, 25.)  Notably, the record evidence that discusses the interaction between Plaintiff's anxiety and his dizziness states Plaintiff can work but must only avoid heights and heavy machinery.  (T. at 375-76, 403.)  Specifically, Dr. Wharton stated Plaintiff suffered from "a type of psychophysiological dizziness," *i.e.*, that Plaintiff's anxiety magnified his dizziness.  (T. at 403.)  Nonetheless, Dr. Wharton found only that Plaintiff's combined conditions suggested Plaintiff should not work on heights or around heavy machinery.  (*Id.*)  Thus, the Court finds the ALJ properly considered Plaintiff's mental impairments, "singly and in combination[.]"  (T. at 19.)

**C.     The ALJ's RFC Determination**

As set forth above, the ALJ, "[a]fter careful consideration of the entire record," found Plaintiff has the RFC to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: able to perform simple, routine tasks; able to perform some complex tasks; able to follow and understand simple instructions and directions; and should avoid unprotected heights, vibrations, heavy moving mechanical parts and other known workplace hazards.

14

(T. at 20.)  Plaintiff argues the RFC is contrary to the properly weighed medical evidence and that the ALJ should have credited his testimony regarding the severity of his symptoms.  (Dkt. No. 9 at 19-23.)  According to Plaintiff, his testimony and the medical evidence establish he would not be able to perform his past work as a packer or photo lab technician because that work requires standing and side-to-side movement.  (*Id*. at 20.)  Relatedly, Plaintiff asserts his testimony establishes he would miss work more than 20% of the time and that would preclude his ability to work.  (*Id*.)  Defendant argues substantial evidence supports the ALJ's RFC determination.  (Dkt. No. 10.)

An RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.  "A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule."  *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quotations omitted)).  It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.  20 C.F.R. § 416.946(c).  In determining the RFC, the ALJ can consider a variety of factors including a treating physician's or examining physician's observations of limitations, the claimant's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments even those not deemed severe.  *Id*. § 416.945(a).  Age, education, past work experience, and transferability of skills are vocational factors to be considered.  *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999).  Physical abilities are determined by evaluation of exertional and nonexertional limitations.  Exertional limitations include the claimant's ability to walk, stand, lift, carry, push, pull, reach, and handle.  20 C.F.R. § 416.969a(b).  Nonexertional limitations include mental impairments and difficulty

performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching.  *Id*. § 416.969a(c).

The RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations.  *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004) (citation omitted).  "In assessing RFC, the ALJ's findings must specify the functions a plaintiff is capable of performing; conclusory statements regarding plaintiff's capacities are not sufficient."  *Roat*, 717 F. Supp. 2d at 267 (citation omitted).  "RFC is then used to determine the particular types of work a claimant may be able to perform."  *Whittaker*, 717 F. Supp. 2d at 440.  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence.  *Trail v. Astrue*, No. 5:09-CV-1120, 2010 WL 3825629 at *6 (N.D.N.Y. Aug. 17, 2010) (citing SSR 96-8p, 1996 WL 374184, at *7).

As recounted above, Plaintiff claims the ALJ erred in analyzing both medical opinion evidence and his testimony regarding his symptoms.  The Court's role in this instance is to review the record to determine whether substantial evidence supports the ALJ's RFC decision.

1.  <u>Medical Evidence</u>

In November and December 2013, Plaintiff saw Mr. Stark, his primary care physician assistant, at Irongate Family Practice and Associates, PLLC, and complained he had chest pain and panic attacks.  (T. at 345-54.)  Plaintiff noted he had panic attacks "several years ago" but he was not currently treating for anxiety.  (T. at 345.)  Plaintiff reported medication improved his symptoms.  (T. at 353.)  Plaintiff followed up with Mr. Stark in March 2014, and noted his anxiety had improved and his general health was "good."  (T. at 355.)

Soon thereafter, on April 22, 2014, Plaintiff returned to Mr. Stark with reports that he began to have dizziness eight days prior which prevented him from being able to drive home from work.  (T. at 358.)  Plaintiff followed up with Mr. Stark on April 29, 2014, complaining of episodic dizziness that occurred daily for a few minutes and problems driving.  (T. at 360.)  Plaintiff returned on May 7, 2014, and reported his dizziness occurs with increased activity and it lasts ten minutes.  (T. at 362.)  Plaintiff reported he had missed three weekends of work due to increased dizziness.  (*Id*.)

Plaintiff was referred to Dr. Wharton, a neurologist.  (T. at 391.)  Dr. Wharton saw Plaintiff on May 23, 2014, and reported he had an initial onset of vertigo on April 14, 2014, that lasted 24 hours and he continued to have daily attacks of vertigo.  (T. at 391.)  Dr. Wharton referred Plaintiff for a hearing examination that indicated Plaintiff had a "unilateral weakness on caloric stimulations suggestive of peripheral pathology."  (T. at 379.)  Dr. Wharton saw Plaintiff again on June 11, 2014, and diagnosed Plaintiff with vestibular neuritis.  (T. at 378.)  Dr. Wharton nest saw Plaintiff on June 26, 2014, and noted that he was to start vestibular rehabilitation.  (T. at 377.)  Plaintiff further reported to Dr. Wharton that he had episodic panic attacks because he is anxious and feels on the verge of having another attack of vertigo.  (*Id*.)  Dr. Wharton suggested Plaintiff consider seeing a psychologist.  (*Id*.)  On July 31, 2014, Dr. Wharton reported Plaintiff was attending vestibular rehabilitation and anticipated easing back to work starting in August 2014.  (T. at 376.)

As set forth above, Plaintiff started vestibular rehabilitation in June 2014 with Mr. Diem.  (T. at 330.)  Records indicate Plaintiff had a total of eight sessions from June until August 19, 2014.  (T. at 334.)  In the discharge report, Mr. Diem noted Plaintiff reported a greater than

"85%" reduction in dizziness and had no vertigo in the last "several weeks." (*Id.*)  Mr. Diem

indicated Plaintiff made "excellent progress." (*Id.*)

On October 2, 2014, Plaintiff went back to Mr. Stark and reported that his vestibular

rehabilitation had improved his symptoms but his improvement had "plateaued." (T. at 366.)

According to Plaintiff, though he returned to work in August, he lost his job shortly after due to

lack of production and too many days off. (*Id.*)  On October 16, 2014, Plaintiff saw Dr. Wharton

and reported he continued to have a few brief occasions of vertigo but was often dizzy. (T. at

375.)  Plaintiff reported he missed work because he was dizzy and could not drive. (*Id.*)

Plaintiff also stated he missed work because of migraines, panic attacks, and irritable bowel

syndrome. (*Id.*)  Dr. Wharton opined Plaintiff had "persistent psychophysiological dizziness that

is aggravated by his anxiety/panic disorder." (*Id.*)  Dr. Wharton suggested Plaintiff start

cognitive behavior therapy but did not order any new neurological intervention. (*Id.*)

On January 7, 2015, Plaintiff saw Dr. Osika.[9] (T. at 393.)  Dr. Osika diagnosed Plaintiff

with panic disorder and vestibular neuritis. (T. at 395.)  Dr. Osika further opined Plaintiff would

"be able to understand and complete simple tasks and would have mild difficulty with complex

tasks." (*Id.*)  Dr. Osika further stated Plaintiff would have mild difficulty interacting with people

in the workplace. (*Id.*)  Dr. Osika noted Plaintiff could manage his own funds and recommended

counseling to help with his panic symptoms. (*Id.*)

On January 15, 2015, Plaintiff saw Dr. Paolano for a complete examination. (T. at 396-

97.)  Dr. Paolano reported that Plaintiff "claims to be very limited in his ability to work due to

---

[9]  The New York State Office of Temporary and Disability Assistance referred Plaintiff to Dr.
Osika.  (T. at 393.)

his various medical issues which include chronic vestibular neuritis, migraine headaches, irritable bowel and panic disorder." (T. at 397.)

Plaintiff returned to Mr. Stark on April 17, 2015, complaining of anxiety. (T. at 438.) Plaintiff reported he had a panic attack most every day. (*Id*.) Mr. Stark recommended counseling. (*Id*.)

On July 10, 2015, Plaintiff saw Mr. Stark for complaints of shortness of breath. (T. at 440.) At this visit, Plaintiff noted he did not have any recent increases in his anxiety. (*Id*.) Treatment notes indicate Mr. Stark recommended Plaintiff see a counselor, but Plaintiff had not seen one yet. (*Id*.)

Plaintiff began counseling treatment with Lilianne Dobert, LCSWR ("Ms. Dobert") in July 2015. (T. at 485.) Plaintiff reported he had not driven since September 2014 and started having panic attacks in November 2013. (*Id*.) Plaintiff also indicated he has agoraphobia and he does not get along with people and can be needy. (*Id*.) Treatment notes indicate Plaintiff's anxiety had been increasing over the last month. (*Id*.) Ms. Dobert concluded that Plaintiff had panic attacks with agoraphobia, depression, neuritis, migraines, poor coping skills, and poor support system. (T. at 489.)

Ms. Dobert next saw Plaintiff on July 29, 2015, a few days after presenting to the emergency room with a panic attack.[10] (T. at 490.) Plaintiff noted he was worried that his doctors were misdiagnosing him and that "something is very wrong with him." (*Id*.) Plaintiff continued to see Ms. Dobert on August 5, 2015; August 12, 2015; August 21, 2015; September

---

[10] On July 27, 2015, Plaintiff presented to Glens Falls Hospital with complaints of feeling very anxious with chest discomfort, difficulty speaking, and tingling in his extremities. (T. at 418.) Patient was given Ativan and discharged. (T. at 420.)

2, 2015; September 10, 2015; September 18, 2015; October 1, 2015; and October 9, 2015. [11]   (T. at 491-96.)  Treatment notes indicate Plaintiff was managing his anxiety using cognitive behavioral techniques.  (T. at 494.)  Ms. Dobert also reported Plaintiff was looking into taking online classes, doing exercises, and applying for jobs through VESID.  (*Id*.)

On August 4, 2015, Plaintiff returned to Mr. Stark with complaints of anxiety and fear that he was having heart palpitations.  (T. at 443.)  Plaintiff noted worsening symptoms but that he had started counseling sessions.  (*Id*.)  Mr. Stark started Plaintiff on a Holter monitor.  (*Id*.)  Plaintiff returned on August 18, 2015, reporting "progressive anxiety."  (T. at 445.)  Mr. Stark noted the Holter monitor results were within normal limits.  (*Id*.)  Thereafter, on September 1, 2015, Plaintiff returned to Mr. Stark and noted he had painful side-effects when taking Escitalopram.  (T. at 447.)  Plaintiff also reported he was less depressed and anxious.  (*Id*.)

Plaintiff returned to Irongate Family Practice on November 13, 2015, to update his medical history and for medication refills.  (T. at 449.)  During this visit, he saw Craig Emblidge, M.D. ("Dr. Emblidge").  (*Id*.)  Plaintiff returned to see Dr. Emblidge on December 17, 2015, and reported he was paying more attention to his diet and increasing his activity level.  (T. at 451.)  Treatment notes on December 17, 2015, indicate Plaintiff was using a recumbent bicycle and was continuing with counseling.  (*Id*.)

Plaintiff's intake examination with Frederick Van Kempen, LCSW-R at Bick Wanck, M.D. & Associates was on November 5, 2015.  (T. at 523.)  Plaintiff had counseling sessions with Mr. Van Kempen on a regular basis from November 2015 until October 2016.  (T. at 523-42.)  Mr. Van Kempen provided several summaries of treatment.  First, in an undated "Clinical Summary," Mr. Van Kempen reported Plaintiff presented at intake with "vague anxiety

---

[11]  Plaintiff missed a scheduled counseling session on October 15, 2015.  (T. at 496.)

symptoms."  (T. at 465.)  Mr. Van Kempen noted he reviewed cognitive behavior techniques

with Plaintiff and, though is affect did not change, Plaintiff did become more vocal over time.

(*Id*.)  Moreover, Mr. Van Kempen stated Plaintiff's "dominant themes" in 2016 were stress

related to his deteriorating financial situation and frustration that his physicians and government

assistance were not taking his symptoms seriously.  (*Id*.)  Plaintiff also reported concern that his

mother and her faith organization were trying to convert him or make him move out of his

mother's home.  (*Id*.)  Mr. Van Kempen indicated he was not optimistic that Plaintiff's condition

would improve soon.  (*Id*.)

    Next, on October 20, 2016, Mr. Van Kempen filled out an "Initial Evaluation" form.  (T.

at 538.)  Mr. Van Kempen assessed a GAF score of 55 and noted his highest previous year GAF

score was 60.  (T. at 539.)  Mr. Van Kempen noted Plaintiff had physical limitations that

restricted Plaintiff's potential work setting and necessitated frequent absences.  (T. at 541.)  Mr.

Van Kempen also noted Plaintiff is "socially isolated."  (*Id*.)

    Finally, Mr. Van Kempen filled out a Functional Capacity Questionnaire for Psychiatric

Disorders on October 27, 2016.  (T. at 543-50.)  Of note, Mr. Van Kampen stated Plaintiff is

socially isolated and stays at home where he can manage his anxiety symptoms.  (T. at 549.)  Mr.

Van Kempen also noted that "new activities or pressure of production expectations as well as

interaction with other employees in a work place are likely to exacerbate symptoms."  (T. at

550.)  Mr. Van Kempen opined Plaintiff would be off task more than 20% of the time at work

and would miss more than two days per month.  (T. at 549.)

    On March 31, 2016, Dr. Wharton saw Plaintiff again after not seeing him since October

2014.  (T. at 403.)  Dr. Wharton noted Plaintiff complained he felt dizzy and nauseated and was

bothered by looking at things moving or riding in a car.  (*Id*.)  Dr. Wharton further reported

Plaintiff has 4-6 migraine headaches a month that last for six hours each.  (*Id.*)  Moreover, Dr. Wharton stated Plaintiff has other less severe headaches five times a week.  (*Id.*)  Dr. Wharton noted Plaintiff's other issues as panic attacks, IBS, GERD, and unexplained tremoring.  (*Id.*)  Dr. Wharton noted Plaintiff has residual symptoms from vestibular neuritis and that his symptoms are magnified by anxiety.  (*Id.*)  Dr. Wharton opined Plaintiff should not work on heights or around heavy machinery.  (*Id.*)

On July 15, 2016, Plaintiff went to West Mountain Primary Care to establish treatment with Dr. Jennifer Stratton, M.D.  (T. at 502.)  Plaintiff described his previous care and noted counseling was not helping and he was still having headaches and panic attacks on a regular basis.  (T. at 502-03.)  Plaintiff had follow-up appointments with Dr. Stratton on August 9, 2016, and September 23, 2016.  (T. at 498, 500.)

Finally, Dr. Daryl Didio, Ph.D., ABPP, provided a Medical Source Statement and Medical Interrogatory dated December 30, 2016, after reviewing Plaintiff's entire medical record.  (T. at 582-89.)  Dr. Didio indicated no restrictions in Plaintiff's ability to understand, remember, and carry out simple instructions.  (T. at 582.)  He noted mild restrictions in Plaintiff's ability to make judgments on simple work-related decisions.  (*Id.*)  Dr. Didio reported mild-moderate restrictions in Plaintiff's ability to understand, remember, carry out, and make judgments on complex work-related decisions.  (*Id.*)  He noted Plaintiff suffers from vestibular neuritis which has resulted in anxiety and depression.  (*Id.*)

Moreover, Dr. Didio indicated Plaintiff has mild-moderate restrictions interacting appropriately with the public, supervisors, and co-workers.  (T. at 583.)  He noted a moderate restriction in Plaintiff's ability to respond appropriately to usual work situations and to changes

in a routine work setting.  (*Id*.)  Dr. Didio explained that Plaintiff's anxiety and depression interfere with his social interaction "to a moderate degree."  (*Id*.)

Furthermore, Dr. Didio opined Plaintiff is not limited regarding his activities of daily living and would not have repeated episodes of decompensation.  (T. at 586.)  He indicated a mild-moderate limitation in Plaintiff's ability to maintain social functioning and maintain concentration, persistence or pace.  (*Id*.)  Dr. Didio noted Dr. Osika opined Plaintiff would only have a mild difficulty to complete complex tasks and interact with others.  (*Id*.)  He further cited record evidence that described Plaintiff's memory as being intact and his attention was only mildly impaired.  (*Id*.)  Dr. Didio pointed out Plaintiff's social worker was silent on Plaintiff's ability to work and there was no medical source statement suggesting a severe impairment.  (*Id*.)  Dr. Didio concluded Plaintiff is able to perform simple routine tasks and interact with peers and supervisors.  (T. at 589.)  Dr. Didio further stated he would recommend "more intense" treatment from a "M.D. or Ph.D."  (*Id*.)

In reaching her RFC, the ALJ afforded "great weight" to the opinions of Dr.Wharton and Dr. Didio; "some weight" to the opinions of Mr. Diem, Dr. Osika, and Dr. Alpert[12]; and "little weight" to the opinions of Dr. Paolano, Mr. Stark, and Mr. Van Kempen.  (T. at 26-28.)

Upon review, the Court finds the ALJ's RFC determination is consistent with the weight she assigned to these opinions.  To that end, the medical records support the ALJ's conclusion that Plaintiff could perform a full range of work at all exertional levels.  Notably, the record is

---

[12]  Dr. Alpert is the physician employed by the State Disability Determination Services.  (T. at 112.)  Dr. Alpert reviewed Plaintiff's medical records and provided his opinion on January 23, 2015, that Plaintiff "would have no more than mild difficulties in any domain of vocational abilities due to his psychiatric status."  (T. at 117.)  Accordingly, Dr. Alpert determined Plaintiff was not disabled.  (T. at 121.)

bereft of any opinions providing Plaintiff is limited in his ability to sit, stand, walk, lift, carry, push or pull.  *See* 20 C.F.R. § 416.969a(b) (defining exertional limitations).

As to the nonexertional limitations, the ALJ credited the opinions of Dr. Osika and Dr. Didio in concluding Plaintiff can perform simple, routine tasks; can perform some complex tasks; and is able to follow and understand simple instructions and directions.  (T. at 20.)  The ALJ further adopted Dr. Wharton's recommendation that Plaintiff avoid unprotected heights and heavy machinery.  (*Id.*)

Therefore, the Court finds the ALJ's RFC determination is supported by substantial evidence.  *See Stacey v. Comm'r of Soc. Sec.*, No. 09-CV-638 (DNH), 2011 WL 2357665, at *6-7 (N.D.N.Y. May 20, 2011) (consultative examiner's opinion that plaintiff appeared to have moderate limitations with regard to bending, lifting, and prolonged standing and walking was consistent with ALJ's determination that plaintiff could perform most forms of light work); *see also Jordan v. Comm'r of Soc. Sec.*, 2018 WL 1388527, at *9-10 (S.D.N.Y. Mar. 19, 2018) (ALJ's determination that plaintiff could perform light work was supported by substantial evidence where consultative examiner's opinion of "moderate" limitations was consistent with objective medical findings in the record).  In sum, though there is record evidence that may support a more restrictive RFC, especially Mr. Van Kempen's medical opinions,[13] it was the

---

[13]  As noted above, Mr. Van Kempen suggested that Plaintiff would be off task 20% of the time and miss more than two days each month.  (T. at 549.)  Had the ALJ credited Mr. Van Kempen's opinion, a finding of disability would have been warranted given the vocational expert's testimony that being off task 20% of the time would preclude all gainful employment.  (T. at 80.)  Plaintiff makes a version of this argument, asserting that the ALJ failed to credit the vocational expert's testimony.  (Dkt. No. 9 at 23.)  The ALJ, however, did not discredit the vocational expert's testimony, she discredited Mr. Van Kempen's medical opinion.  As discussed above, the Court finds substantial evidence supports the ALJ's decision to afford little weight to Mr. Van Kempen's opinion.  Thus, Plaintiff's argument is without merit.

ALJ's exclusive province to consider all the relevant evidence, weigh the respective opinions, and ultimately reconcile conflicting evidence. *See Aponte v. Sec'y, Dept. of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (noting that "[i]t is the function of the Commissioner, not the reviewing courts, to resolve evidentiary conflicts …" (citation and internal punctuation omitted)).

2.    Subjective Evidence

In addition to reviewing the medical evidence in determining the RFC, the ALJ must review the plaintiff's subjective symptomology.  To satisfy the substantial evidence rule, the ALJ's assessment must be based on a two-step analysis of pertinent evidence in the record.  20 C.F.R. § 416.929; *Genier*, 606 F.3d at 49; SSR 96-7p, 1996 WL 374186, at *5 (SSA July 2, 1996).

First, the ALJ must consider "whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the claimant's pain or other symptoms."  SSR 96-7p, 1996 WL 374186, at *2.[14]  This finding does not involve a determination as to the intensity, persistence, or functionally limiting effects of the plaintiff's other symptoms.  *Id.*  If no impairment is found that could reasonably be expected to produce pain, the plaintiff's pain cannot be found to affect the plaintiff's ability to do basic work activities.  *Id.*  An individual's statements about her symptoms are not enough by themselves to establish the existence of a physical or mental impairment, or to establish that the individual is disabled.  *See Grewen v. Covlin*, No. 1:11-CV-829, 2014 WL 1289575, at *4 (N.D.N.Y. Mar. 27, 2014) (while a "claimant's subjective complaints are an important part of the RFC calculus . . .

---

[14]  SSR 16-3p superseded SSR 96-7p effective March 28, 2016. However, SSR 96-7p remains relevant to Plaintiff's claim because it was filed before March 28, 2016.

subjective symptomatology by itself cannot be the basis for a finding of disability . . . [and] [a] claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptoms alleged."); *see also* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.929; SSR 96-7p.

Once an underlying physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms has been established, the second step of the analysis is for the ALJ to "consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with other objective medical evidence and other evidence." *Genier*, 606 F.3d at 49 (quoting 20 C.F.R. § 404.1529(a)); *see also Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (finding that claimant's subjective complaints of pain were insufficient to establish disability because they were unsupported by objective medical evidence tending to support a conclusion that he has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms); *see also* SSR 96-7p, 1996 WL 374186, at *5 ("One strong indication of the credibility of [an individual's statements is their] consistency, both internally and with other information in the case record."). This includes evaluation of the intensity, persistence, and limiting effects of the pain or symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities. *Genier*, 606 F.3d at 49.

The ALJ must consider all evidence of record, including statements the claimant or others make about her impairments, her restrictions, daily activities, efforts to work, or any other relevant statements the claimant makes to medical sources during the course of examination or treatment, or to the agency during interviews, on applications, in letters, and in testimony during administrative proceedings. *Id.* (citation omitted).

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'"  *Lewis*, 62 F. Supp. 2d at 651 (quoting *Gallardo v. Apfel*, Civ. No. 96-9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 2, 1999)); *Ferraris*, 728 F.2d at 587.  "A finding that a [claimant] is not credible must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record."  *Williams*, 859 F.2d at 260-61 (citation omitted) (finding that failure to make credibility findings regarding claimant's critical testimony undermines the Secretary's argument that there is substantial evidence adequate to support his conclusion that claimant is not disabled).  "Further, whatever findings the ALJ makes must be consistent with the medical and other evidence."  *Id*. at 261 (citation omitted) ("[A]n ALJ must assess subjective evidence in light of objective medical facts and diagnoses.").  Ultimately, the ALJ's evaluation of a plaintiff's credibility is entitled to great deference if it is supported by substantial evidence.  *Murphy v. Barnhart*, Civ. No. 00-9621, 2003 WL 470572, at *10 (S.D.N.Y. Jan. 21, 2003) (citing *Bischof v. Apfel*, 65 F. Supp. 2d 140, 147 (E.D.N.Y. 1999)); *Bomeisl v. Apfel*, Civ. No. 96-9718, 1998 WL 430547, at *6 (S.D.N.Y. July 30, 1998) ("Furthermore, the ALJ has discretion to evaluate a claimant's credibility . . . and such findings are entitled to deference because the ALJ had the opportunity to observe the claimant's testimony and demeanor at the hearing.").

Here, in making her determination, the ALJ found Plaintiff's medically determined impairment could reasonably be expected to cause Plaintiff's alleged symptoms.  (T. at 22.) However, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible.  (*Id*.)

27

Plaintiff argues the ALJ erred in the assessment of his credibility.  (Dkt. No. 9 at 20.)
Specifically, Plaintiff claims the ALJ improperly discredited his testimony regarding his "dizzy
days" and that he would subsequently miss several days of work each month.  (*Id*.)  The Court
agrees with the Commissioner that the ALJ's credibility finding was proper and supported by
substantial evidence.  (Dkt. No. 13 at 13-15.)

In this case, the ALJ applied the appropriate standards in assessing the credibility of
Plaintiff's statements regarding the severity of his symptoms and limitations.  (T. at 17-18.)  In
making her credibility assessment, the ALJ considered a number of factors, including
discrepancies in Plaintiff's various statements and in his testimony with regard to the nature and
scope of his daily activities.  20 C.F.R. § 416.929; SSR 96-4p; SSR 96-7p.  To that end, the ALJ
noted Plaintiff reported no problems with personal care tasks, did not require any special help or
reminders for medical care, did not need reminders to take his medication, was able to prepare
simple meals up to twice a day, and could perform household chores.  (T. at 28, 255-57.)
Moreover, Plaintiff reported going out independently up to three times a day, was able to travel
by walking or riding in a car, and went shopping.  (T. at 28, 257-58.)  Plaintiff was further able
to handle a savings account, count change, and could pay bills.  (T. at 28, 258.)  The ALJ noted
Plaintiff continued to engage in hobbies and interests including reading, photography, and
watching television and movies.  (*Id*.)  Additionally, Plaintiff stated he socialized with others a
couple of times a week and would go to the mall and go grocery shopping.  (T. at 28, 259.)
Furthermore, the ALJ explained Plaintiff was able to follow written and spoken instructions and
his ability to remember things was normal.  (T. at 28, 582, 586.)

Moreover, though Plaintiff reported that he received no benefit from prior vestibular
rehabilitation, the treatment records show he was discharged after achieving his goals and

obtained more than 85% improvement in his symptoms.  (T. at 28, 334.)  Likewise, at the end of

his rehabilitation, Plaintiff self-reported he had none to only minor problems performing normal

duties, *e.g*., self-care, eating, managing household, movement, physical demands, and

maintaining positions.  (T. at 336-37.[15])  Finally, the ALJ generally discussed Plaintiff's

treatment represented essentially routine and conservative treatment that was not what one would

expect for a totally disabled individual.  (T. at 28-29.)

      Based upon the above, the ALJ did not err in her assessment of Plaintiff's credibility.

Accordingly, the Court finds Plaintiff's RFC is based upon proper legal standards and is

supported by substantial evidence.

## V.    CONCLUSION

      In light of the foregoing, the Court finds the ALJ's decision was based upon correct legal

standards, and substantial evidence supports her determination that Plaintiff was not under a

disability within the meaning of the SSA.  20 C.F.R. § 416.920(g).

      **WHEREFORE,** it is hereby

      **RECOMMENDED**, that the Commissioner's decision be **AFFIRMED** and Defendant's

motion for judgment on the pleadings (Dkt. No. 10) be **GRANTED** and the complaint (Dkt. No.

1) be **DISMISSED**.

      Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file

written objections to the foregoing report.  Such objections shall be filed with the Clerk of the

Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

---

[15] The Court notes Plaintiff did report "moderate" problems driving, playing sports, and
performing normal tasks/duties at work.  (T. at 337.)

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72.

Dated: July 16, 2019
        Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

30